# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 1, 2011

## ELMER HARRIS v. STATE OF TENNESSEE

**Direct Appeal from the Shelby Court for Criminal County**
**No. 05-01714-15    Paula Skahan, Judge**

---

**No. W2010-00781-CCA-R3-PC  - Filed September 7, 2011**

---

The Petitioner, Elmer Harris, appeals the post-conviction court's denial of his petition for post-conviction relief.  He was convicted by a jury of aggravated assault, attempted aggravated robbery, and aggravated robbery.  The Petitioner received an effective sentence of twenty-nine years in confinement. In this appeal, he argues that he was denied the effective assistance of counsel at trial and on appeal.  He claims that trial counsel was ineffective for failing to adequately investigate witnesses, failing to question discrepancies in the witnesses' statements, and failing to provide complete discovery until after trial.  He further claims appellate counsel was ineffective because the Petitioner was not notified that his direct appeal had been denied until after the deadline to file a Rule 11 appeal to the Tennessee Supreme Court had expired.  We affirm the judgment of the post-conviction court with respect to trial counsel.  In regard to appellate counsel, we conclude that the Petitioner is entitled to petition the Tennessee Supreme Court for further review pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure.

**Tenn. R. App. P.  3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part, and Reversed in Part**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Sean H. Muizers, Memphis, Tennessee, for the Defendant-Appellant, Elmer Harris.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Bryan Davis, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Background**.  The facts, as relevant to this appeal, have been previously described as follows:

> At approximately 3:30 a.m. on July 4, 2004, Gregory Martin was working as a clerk at a Mapco convenience store in Memphis when a man entered the store, placed a one dollar bill on the counter, and asked for a single "Black and Mild" cigar.  When Martin opened the drawer of the cash register, the man produced a chrome handgun, pointed it at Martin, told Martin to step into the back of the store, and instructed him "not to be a hero."  The man then reached into the cash register drawer and removed between sixty and seventy dollars.  Martin stepped into a back room, and the man proceeded to leave the store.  Martin called the police and then called the store's security team.  When the police arrived, Martin described the suspect to them as a "black man, medium to light skin complexion, about six feet [tall], wearing a black T-shirt with white writing, [and] khaki to yellow pants."  The convenience store was also equipped with a surveillance camera, which was operating at the time of the crime.  On September 5, 2004, after viewing a photographic lineup shown to him by the police, Martin identified the Appellant as the perpetrator.  At a preliminary hearing in November of 2004, Martin again identified the Appellant.

> Sometime after 1:00 a.m. on July 10, 2004, Melissa Wright, a clerk at a Circle K convenience store, and a coworker were in a back office of the store when they noticed on the store's surveillance camera a man entering the store.  Wright went out to help the man while her coworker remained in the back office.  Wright asked the man if she could help him, and he asked for one "Black and Mild" cigar.  Wright told the man the cigar would cost seventy-five cents, and he handed her a one dollar bill.  As Wright closed the cash register drawer and prepared to give him the cigar and his change, the man said "look at this" and pointed a chrome handgun at her face.  Wright then turned and ran into the back office, and her coworker pushed the store's "panic button" to summon the police.  Wright later identified the Appellant as the perpetrator from a photographic lineup.  At trial, Wright testified that the robber was wearing a navy blue t-shirt that "had a T slash ... MAC, M-A-C on the shirt."

State v. Elmer Harris, No. W2006-02516-CCA-R3-CD, 2007 WL 2822909 at *1-2 (Tenn. Crim. App. at Jackson, Sept. 27, 2007).  Based on the above proof, the Petitioner was convicted of aggravated assault, attempted aggravated robbery, and aggravated robbery.  He filed a timely appeal to this court in which he challenged whether the indictments were properly consolidated and whether the evidence was sufficient to support his convictions.

This court affirmed the Petitioner's convictions and sentences. However, the case was remanded to allow the trial court to merge the aggravated assault into the attempted aggravated robbery.

On August 19, 2008, the Petitioner filed a pro se petition for post-conviction relief, which was followed by the filing of an amended petition by appointed counsel on April 9, 2009. The Petitioner raised several issues in his petition for post-conviction relief alleging the ineffective assistance of counsel at trial and on appeal. The allegations against trial counsel centered on her failure to provide complete discovery, failure to fully investigate alibi witnesses, and failure to adequately cross-examine witnesses.[1] The petitioner alleged that appellate counsel failed to notify him that his direct appeal had been denied. As a result, the petitioner claimed he was unable to file a Rule 11 appeal to the Tennessee Supreme Court.

**Post-Conviction Hearing**. The Petitioner testified that "a lot of stuff that should have been brought out at trial that I didn't even know about that once I got my full discovery I found out about, that was never brought out in trial." His first complaint was that Gregory Martin and Melissa Wright, the two witnesses who identified him at trial, "chang[ed] their description after seeing a photo of [him]." Specifically, the Petitioner explained:

> Both of them, after they seen my picture, they described seeing bald headed, goatee. Gregory Martin said that the guy was, well Melissa Wright, she said he was, she described me from my picture. But, on the night of the robbery she said the guy was, she said he was a clean shaven, medium to regular, short, bald and balding. His general description, general appearance unkempt. She never said anything about goatee or anything.

The Petitioner further alleged that he was not provided with discovery until after trial. He said that this was important because it revealed that a confidential informant told Sergeant Billy Smallwood that he was responsible for the instant robberies and he "never knew about [it]." He also complained that he received only black and white copies of the photographs from the robberies and was unable to get copies of the photographs in color. He claimed the color photographs would have shown that he was not the perpetrator of the crimes. He testified that "[i]n one scene when he saw the tape at the Mapco robbery it showed the guy when he came in the store. You could see his face plastered all over the screen of the tape,

---

[1] The Petitioner raised several other issues in his petition for post-conviction relief and before the trial court. However, his brief is limited to the effectiveness of trial and appellate counsel on these four (4) issues only. Therefore, our opinion addresses only the issues raised in the Petitioner's brief and all other issues are waived.

over the TV." While the Petitioner had a mole on his eye, the person in the photograph did not. He also said he had a scar on his forehead which neither of the eyewitnesses mentioned in their description of him.

The Petitioner testified that he provided trial counsel with two alibi witness, which were not investigated. He provided counsel with the name and phone number for "Thomas Hatley" as an alibi witness for the July 4 robbery and "Sharon" and "Elsie" for the July 10 robbery. The Petitioner continued and explained that the information regarding Sergeant Billy Smallwood was important because, "everybody in the neighborhood knew Smallwood was dirty[.]" The Petitioner testified that at the consolidation hearing the victims of the robberies provided inconsistent descriptions of the weapon used during the robbery. He stated that Melissa Wright said it was a "silver handgun" and in her statement "it was a thirty-eight." Gregory Martin "said it was a chrome handgun, it was a forty caliber pistol." He said that one victim described an automatic and the other victim described a revolver.

The Petitioner said that he could never contact appellate counsel until after he wrote the Board of Professional Responsibility (BPR). He was then notified by appellate counsel that he had been suspended. The Petitioner testified that a Rule 14 certification and appellate counsel's notice to withdraw were sent to him at the Shelby County Jail on October 4, 2007. However, the Petitioner had been moved from the Shelby County Jail to the Hardeman County Correctional Facility some ten months earlier, in January of 2007. Because appellate counsel failed to notify him that his appeal had been denied, the Petitioner was unable to apply for permission to appeal his case to the Tennessee Supreme Court.

On cross-examination, the Petitioner conceded that he received some of his discovery prior to trial, including the statements of the victims. He did not receive a police officer's report following his visit to Melissa Wright's residence. He did not believe that trial counsel cross-examined the victim, Melissa Wright, effectively because she did not question her about "changing her description" or "the [police officer's] visit" to the victim's residence. He conceded that he was provided with black and white photographs of the robberies, but maintained that he was not provided with "all" of the photographs. He agreed however that he was shown "all" of the photographs during trial.

On re-direct examination, the Petitioner explained that a video of both robberies was shown at trial. Regarding the Circle K robbery, the Petitioner believed, based on the photographs that he was shown, that there was "more to the video" and it was not shown. Regarding the Mapco robbery, the Petitioner said it was not of good quality.

Trial counsel, an Assistant Shelby County Public Defender for nearly twenty years, testified that the Petitioner provided her with the name of "Christian Davis" as an alibi

witness for the July 4 robbery. The alibi witness stated that the Petitioner had been with him at his grandmother's house and stayed overnight on July 4. Trial counsel explained, "The problem with that was that this robbery occurred in the early morning hours of July 4th before Mr. Harris would have arrived at his grandmother's house." Regarding Melissa Good, trial counsel recalled the Petitioner had "not had any contact with her and had no idea where to find her by the time he was arrested[.]" Regarding the potential "Sharon" alibi, trial counsel stated the Petitioner told her "that he didn't think she worked at Circle K anymore." When trial counsel pressed the Petitioner about Sharon's last name and address, the Petitioner told counsel to "drop it" because she was married and "he did not want her to get in trouble."

Trial counsel testified that she provided the Petitioner with discovery prior to trial. She explained, "[T]here would be no reason to give somebody discovery after the trial." She said they had many discussions regarding his case and that they specifically discussed the photographs and the mole on the Petitioner's face. She acknowledged that the Petitioner asked for a second copy of the color photographs. In turn, she asked the prosecutor for the second set, and for some reason, the prosecutor was unable to provide it. She then asked the prosecutor to allow the Petitioner to view the photographs in court, which was permitted. Trial counsel stated that there were no photographs at trial that she had not previously seen. Trial counsel further confirmed that the videos shown at trial of the robberies were the same videos that she viewed in discovery and that nothing had been "edited out."

Trial counsel explained that the basis of the State's motion to consolidate the offenses was not the similarity of the gun, as suggested by the Petitioner. In her view, "there was not a difference between a silver and chrome gun." She explained that the State consolidated the cases based on "the common scheme" of the perpetrator using the same procedure. In each robbery, the perpetrator wore a similar t-shirt, asked for a "Black and Mild," put just one dollar bill on the counter, and used a silver or chrome gun. Trial counsel further confirmed that the Petitioner told her that Sergeant Smallwood stopped him some time between July 15 and July 25. She recalled the Petitioner advising her that, "Smallwood roll[ed] up . . . have pictures of quote, robber, shows to Smallwood, he says it's not defendant." She declined to speak with Sergeant Smallwood or call him as a witness. She reasoned:

> The likelihood that an officer, a police officer would come in and testify about something that happened, well, at that point two years earlier and testify for a defendant. It's always risky to put a police officer as a defensive witness. And, it truthfully didn't come down to whether or not Mr., you know, Sergeant Smallwood thought he was the robber, it was whether or not the witnesses did.

Finally, trial counsel testified that Yolanda Davis, who was present in the back room with Melissa Wright during the Circle K robbery, may have moved away from Memphis following the indictment in this case.

Appellate counsel, a veteran Assistant Shelby County Public Defender, testified that he filed a brief in the Petitioner's case and sent it to the Petitioner. He stated that he filed a Rule 14 motion to withdraw "thinking there wasn't going to be any merit to a Rule 11 application for permission to appeal." He sent the Petitioner a copy, but conceded that it was addressed to the Shelby County Jail, not the Petitioner's current address. Appellate counsel said that he did not advise the Petitioner that he would be representing him beyond the direct appeal, nor did appellate counsel mislead the Petitioner in regard to further appeals.

By written order, the post-conviction court denied the petitioner relief.

## **ANALYSIS**

The Petitioner claims that trial counsel was deficient for failing to investigate various witnesses for trial including Yolanda Davis, a potential witness to the Circle K robbery, and Sergeant Smallwood. He argues that had counsel spoken with Sergeant Smallwood, she would have determined that the Petitioner was developed as a suspect through a confidential informant. The Petitioner further claims that counsel was deficient for failing to provide him with complete discovery until after the conclusion of the trial and failing to question the discrepancies in the witness's identification of the guns at the consolidation hearing. The Petitioner also argues that "the trial court erred in denying [his] Petition for Post Conviction Relief because Appellant's Sixth Amendment right to effective assistance of appellate counsel was violated." He argues that appellate counsel failed to properly notify him that his appeal had been denied. The State contends that the Petitioner failed to prove his claims by clear and convincing evidence; therefore, the post-conviction court properly denied relief. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a

-6-

legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 370.

"'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068).

This court has concluded that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The presentation of the witness at the post-conviction hearing is the only way for the petitioner to establish:

> (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case,
>
> (b) a known witness was not interviewed,
>
> (c) the failure to discover or interview a witness inured to his prejudice, or
>
> (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.

Id.

"To determine whether appellate counsel was constitutionally effective, we use the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984)--the same test that is applied to claims of ineffective assistance of trial counsel asserted under the Sixth Amendment to the United States Constitution." Carpenter v. State, 126 S.W.3d 879, 886 (Tenn. 2004); see also Smith v. Murray, 477 U.S. 527, 535-36 (1986) (applying Strickland to a claim of attorney error on appeal).

**Trial Counsel.** The post-conviction court considered the evidence presented at the hearing and determined that trial counsel's performance was "'within the wide range of reasonable professional assistance' in criminal matters." Upon our review, nothing in the record preponderates against the findings of the post-conviction court regarding trial counsel. We note at the outset that, based on the issues presented by the Petitioner in his petition as well as his testimony before the post-conviction court, we struggle to ascertain his primary complaint with trial counsel. Trial counsel investigated the names provided by the Petitioner to the extent that she could. She was given partial names and addresses, and told not to pursue one witness. Trial counsel testified that Yolanda Davis, a potential witness, had re-

located. The Petitioner did not testify how her testimony would have affected his case and failed to present her during the post-conviction hearing as required by Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The record shows trial counsel considered Sergeant Smallwood as a witness, and, given her experience with police officers testifying for defendants, declined to call him as a witness.

Based on the Petitioner's testimony about the photographs and the videos, he seemingly argues, as he did on direct appeal, that he was misidentified by the victims in his cases.[2] His post-conviction testimony and brief focuses more on his interpretation of inconsistencies between the videos and the still photographs of the robberies and less on the inadequacies of trial counsel. The record shows that the Petitioner was shown all of the photographs and the videos in this case. Trial counsel testified that the photographs and the videos that she viewed in discovery were the same as those admitted at trial. The petitioner has failed to demonstrate either deficient performance or prejudice required for this claim. He is not entitled to relief on this issue.

**Appellate Counsel.** Appellate counsel testified that a letter was sent to the petitioner, consistent with his office policy, opening the Petitioner's case and sending him a copy of the trial transcripts and brief. Appellate counsel did not recall any specific "communications" with the Petitioner. After the Petitioner's conviction was affirmed, appellate counsel sent the Petitioner a Rule 14 motion to withdraw "thinking there wasn't going to be any merit to a Rule 11 application for permission to appeal." The record shows the motion was sent to the Shelby County Jail, some ten months after the Petitioner had been transferred to the Hardeman County Correctional Facility. When asked whether the Petitioner received the motion, appellate counsel replied, "if the address he gave us today is correct then obviously he did not get it." The record shows that appellate counsel or his office knew that the Petitioner was located at the Hardeman County Correctional Facility because the Petitioner had received all other previous correspondence, including the initial opening letter, the trial transcripts, and briefs, at the Hardeman County Correctional Facility. Appellate counsel testified, "If the letter went to – the Rule 14 went to [the Shelby County Jail] then that clearly was a mistake and [the Petitioner] may have a valid complaint there. I'm not going to deny that."

The post-conviction court determined that the Petitioner failed to show by clear and convincing evidence that appellate counsel failed to notify the Petitioner that his appeal had

---

[2]It is evident from the record that the Petitioner referred to various documents throughout his testimony, none of which were identified for the record or admitted as exhibits to the hearing. We are without the benefit of these documents including the photographs and the videos that the Petitioner repeatedly referred to during the hearing.

been denied. The post-conviction court emphasized the Petitioner's testimony that "it was 'true' that on the last day for his appeal to be filed, he knew that no appeal had been filed on his behalf." The post-conviction court further determined:

> While counsel may be considered deficient for failing to notify defendants of their option to seek review by the Supreme Court, the evidence here shows that Appellate Counsel did in fact file a timely Rule 14 motion intended to notify Petitioner on how to appeal to the Tennessee Supreme Court. Moreover, although the Petitioner indicates that he never received the Rule 14, the evidence does not support a finding that the error was through fault of Appellate Counsel. Furthermore and assuming arguendo that Appellate Counsel was deficient, Petitioner fails to show that the outcome of his case was prejudiced.

The proof at the hearing shows that appellate counsel sought to comply with Supreme Court Rule 14 in moving to withdraw as the petitioner's attorney and attempting to send the proper notification to the petitioner. However, as candidly admitted by appellate counsel and in light of the prior correspondence which was properly addressed to and received by the Petitioner, appellate counsel did not properly address the Rule 14 motion. On similar facts, this court has previously held:

> In order to assure that a defendant is not left ignorant of his procedural rights to pursue a discretionary appeal from a final judgment of this Court, Supreme Court Rule 14 provides for the minimum requirements to assure a defendant's right of due process. State v. Brown, 653 S.W.2d 765, 766-67 (Tenn. Crim. App. 1983). In this respect, although the trial court found that the petitioner's ignorance of the filing of this court's opinion in the direct appeal was not due to counsel's neglect, this does not negate the fact that counsel did not actually assure that the petitioner was not left ignorant of his procedural rights to seek supreme court review. With the affirmative duty being placed upon counsel to notify the petitioner of his further right to appeal and with the record reflecting that such lack of notification in this case was not caused by the petitioner, Brown indicates that a violation of the petitioner's right to due process may be involved. Therefore, in the interest of justice and to assure strict compliance with due process, we conclude that the petitioner's right to seek supreme court review in his direct appeal should be reinstated. See, e.g., State v. Lester D. Herron, C.C.A. No. 03C01-9109-CR-00284, Hawkins Co. (Tenn. Crim. App. Mar. 10, 1992).

Cornelius Tyrone Luster v. State, No. 02C01-9409-CR-00205, 1995 WL 422798 at *3-4 (Tenn. Crim. App. July 19, 1995) (internal quotations omitted). Accordingly, and consistent with the above authority, we reinstate the Petitioner's right to seek supreme court review of his direct appeal in this matter.

## **CONCLUSION**

We affirm the post-conviction court's denial of relief relative to the effective assistance of counsel at trial. The record demonstrates a sufficient basis for relief in order to allow the petitioner to seek supreme court review of this court's judgment in the direct appeal. We therefore vacate our judgment filed on September 27, 2007, in State v. Elmer Harris, No. W2006-02516-CCA-R3-CD, at Jackson, and reenter it, effective as of the date of the release of this opinion, for the sole purpose of reinstating the time allowed for seeking permission to appeal to the supreme court in that case.

_____

CAMILLE R. McMULLEN, JUDGE